# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

BRENDA LEE STACY,           )
                            )
          Plaintiff,        )
                            )
v.                          )   Case No. CIV-12-049-JHP
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social      )
Security Administration,    )
                            )
          Defendant.        )

## REPORT AND RECOMMENDATION

Plaintiff Brenda Lee Stacy (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on January 18, 1960 and was 51 years old at the time of the ALJ's decision. Claimant completed her high school education and obtained a Bachelor's degree in elementary education. Claimant has no past relevant work. Claimant alleges an inability to work beginning March 27, 1998 due to the limitations resulting

from chronic pain, depression, and anxiety.

**Procedural History**

On December 18, 2009, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, et seq.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. An administrative hearing was conducted before ALJ Osly Deramus on September 13, 2011 in McAlester, Oklahoma. On October 17, 2011, the ALJ issued an unfavorable decision on Claimant's application. On December 21, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to find Claimant suffered from other severe impairments at step two of the sequential evaluation; (2) failing to engage in an appropriate

credibility analysis; (3) reaching an erroneous RFC determination; and (4) failing to consult a vocational expert.

## Step Two Analysis

In his decision, the ALJ determined Claimant suffered from the severe impairments of chronic pain from a remote motor vehicle accident and an overactive bladder. (Tr. 13). In her first point of error, Claimant contends the ALJ should have found her conditions of fibromyalgia, obesity, depression, anxiety, somatization disorder, and personality disorder to also be severe impairments at step two. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet

the presence of a medical condition alone is not sufficient at step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20

C.F.R. § 416.927(a)(1).

Claimant asserts her fibromyalgia constituted a severe impairment. The relevant period for consideration is between the date Claimant filed for benefits on December 18, 2009 and October 17, 2011 when the ALJ rendered his decision. Although Claimant had been treated for fibromyalgia in the past, the more relevant and recent medical records indicate the medical professionals treating her had changed their diagnosis. On August 4, 2009, Dr. Tracy Baker specifically found "NO tenderness in points typical of fibromyalgia." (Tr. 241). Similarly, in a February 12, 2010 examination, Dr. Wojciech L. Dulowski found "[p]atient has tenderness at many points, but I don't really appreciate any full blown fibromyalgia." (Tr. 248). Later, in a consultative examination by Dr. Sean Neely on July 12, 2010, it was noted that prior examinations had found "fibromyalgia is not present." Dr. Neely also stated that at the independent consultative examination Claimant asserted her chronic pain was attributable to a prior motor vehicle accident. (Tr. 278). On October 5, 2010, Dr. Janet G. Rodgers found "clmt has tenderness at many points but fibromyalgia not appreciated." (Tr. 299). Although Claimant has testified to her condition, the medical record does not support a finding that she suffers from fibromyalgia or that the condition constitutes a severe impairment. The ALJ did not err in his findings on this condition.

Claimant next contends the ALJ should have found her depression, anxiety, somatization disorder, and personality disorder to be severe impairments. In his decision, the ALJ found these conditions do not cause more than minimal limitation in Claimant's ability to perform basic mental work activities. (Tr. 14). Just prior to the relevant period on August 4, 2009, Claimant was diagnosed with neurotic depression and anxiety states by Dr. Baker. She demonstrated appropriate judgment and insight, was oriented to person, place, and time and had normal recent and remote memory. Claimant, however, had a depressed affect, had LOAs and tangents, and Dr. Baker found it very difficult to get a coherent history from Claimant. Claimant was prescribed Celexa. (Tr. 241).

On April 28, 2010, Claimant was evaluated by Dr. Robert L. Spray, Jr. He found Claimant affect was appropriate and variable, although he found her to be somatically preoccupied. At times Claimant was teary-eyed and depressed. Claimant's intellectual functioning was appropriate with an average IQ. Dr. Spray diagnosed Claimant with Depression, NOS, Anxiety Disorder, NOS, Somatization Disorder, and Personality Disorder with histrionic, passive aggressive, and borderline features. (Tr. 253-54).

Dr. Spray also evaluated Claimant's adaptive functioning. Claimant demonstrated normal speech articulation although her communication was difficult at times because of circumstantial,

tangential, and derailed speech. No substantial difficulty in social functioning was noted - Claimant reported no difficulty in relating to others on previous jobs. Claimant reported no difficulty in self-care, she drives, does no yard work, does her own shopping and handles her own finances. She takes her son to games and activities such as Boy Scouts. Claimant does her own housekeeping, likes to read and use the computer, including Facebook. (Tr. 254). Claimant's concentration was fair to good during the interview with Dr. Spray although her thoughts were circumstantial, tangential, and derailed. She persisted well and her pace was normal. (Tr. 255).

On June 17, 2010, Dr. Ruth Ann Mertens completed a Psychiatric Review Technique form on Claimant. She found Claimant had affective disorders, anxiety-related disorders, somatoform disorders, and personality disorders. (Tr. 257). Dr. Mertens noted Claimant was diagnosed with depression, NOS, neurotic depresssion, anxiety, NOS, anxiety state, somatization, personality disorder with histrionic, passive aggressive, borderline features. (Tr. 257-66). In the "B" criteria, Dr. Mertens found only a mild limitation in one area of functioning - that of difficulties in maintaining social functioning. (Tr. 267). After reviewing the various medical records, Dr. Mertens concluded Claimant's mental conditions posed no more than a mild limitation upon her functioning. (Tr. 269). Nothing in the medical record would

indicate the level of severity of Claimant's mental impairments which she now urges. This Court finds no error in the ALJ's assessment of these conditions.

### Credibility Determination

Claimant next challenges the ALJ's credibility findings. The ALJ found Claimant's testimony to be less than credible on the limitations allegedly imposed upon her by her medical conditions. (Tr. 16-20). The ALJ took great pains to set forth Claimant's testimony and the inconsistency of her statements in comparison with the medical record.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other

10

symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ's findings more than satisfy the evaluation technique required by the prevailing case authority.

### RFC Determination

Claimant contends the ALJ's RFC does not account for all of her limitations. Most of these limitations find their basis in Claimant's testimony which was appropriately subject to a credibility challenge from the ALJ as already noted herein. This Court finds not error in the ALJ's RFC findings based upon Claimant's medically determinable conditions.

### Use of the Vocational Expert

This final argument set out by Claimant has a rather

11

misleading title. While it appears from this title that Claimant asserts the ALJ failed to consult with a vocational expert in this case, in fact, she is challenging the ALJ's application of the grids. The ALJ determined that the application of Medical-Vocational Rule 202.20 (before age 50) and 202.13 (after age 50) precluded a finding of disability. (Tr. 21). Claimant asserts the presence of non-exertional impairments prevented the ALJ from applying the grids. In order to help evaluate the step five requirement, whether or not there are sufficient jobs in the economy that the claimant can perform given his or her age, education, and work experience, the Social Security Administration has created Medical-Vocational Guidelines, also known as "the grids." *See* 20 C.F.R. § 404.1567; 20 C.F.R. Pt. 404, Subpt. P, App. 2; Trimiar v. Sullivan, 966 F.2d 1326, 1332 (10th Cir. 1992). Five degrees of residual functional capacity are outlined in the grids by general exertional level-sedentary, light, medium, heavy, and very heavy exertion. 20 C.F.R. § 404.1569a; Trimiar, 966 F.2d at 1332 n. 22. Residual functional capacity reflects "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). If the ALJ finds that a claimant's exertional capacity, education, age, and skills fit precisely within the criteria of a particular grid level, the ALJ may conclude the claimant is not disabled. Haddock v. Apfel,

196 F.3d 1084, 1088 (10th Cir. 1999). The use of the grids is not appropriate unless the ALJ finds "(1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Furthermore, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids." Channel v. Heckler, 747 F.2d 577 at 582 n.6 (10th Cir. 1984). The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant. Id.

Non-exertional limitations affect a claimant's ability to meet the demands of jobs that do not involve strength. 20 C.F.R. § 404.1569a(a). Examples cited include "(1) difficulty functioning because you are nervous, anxious, or depressed; (2) difficulty with maintaining attention or concentration; (3) difficulty understanding or remembering detailed instructions; (4) difficulty seeing or hearing; (5) difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; (6) difficulty with manipulative or postural functions

such as reaching, handling, stooping, climbing, or crawling." 20 C.F.R. § 404.1569a(c).

Claimant identifies the nonexertional impairments from which she allegedly suffers as chronic pain syndrome and overactive bladder. No medical professional has found Claimant's pain when treated to be so debilitating so as to limit the range of work she is able to perform. Additionally, Claimant's overactive bladder was reported to Dr. Baker as "controlled." (Tr. 272). The credibility of Claimant's statements on the limitations she now asserts has been questioned. Again, no medical professional has recognized the level of limitation to which Claimant has testified. This Court finds the application of the grids in these circumstances was appropriate.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such

findings.

DATED this 19th day of October, 2012.

                                        _____
                                        KIMBERLY E. WEST
                                        UNITED STATES MAGISTRATE JUDGE